IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSE HERNANDEZ CERRATO,<br><br>*Defendant* | Case No. 1:23-cr-00419-MJM-1 |

**MEMORANDUM OPINION**

Jose Hernandez Cerrato has been charged in a one-count indictment for illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). At the time of his indictment, he was detained in the custody of U.S. Immigration and Customs Enforcement ("ICE"). He is presently in the custody of the U.S. Marshals Service ("Marshals"). He has requested to return to the custody of ICE in order to restart a proceeding to determine whether he is entitled to protection under the Convention Against Torture, *see* 8 CFR §§ 1208.16-.18, which was put on hold when he was transferred to Marshals custody. Mr. Hernandez[1] further does not oppose an order of conditional detention, such that in the event ICE were to no longer seek to hold him in ICE custody, via release or an order of deportation, he would be required to be transferred back to Marshals custody.

The government opposes the request. It argues this Court should order that Mr. Hernandez remain in Marshals' custody, as opposed to ICE custody, because otherwise there is a "serious risk that [Mr. Hernandez] will flee." ECF No. 21 ("Gov't Mem.") at 4 (referring to the

---

[1] Although referred to in this case as Mr. "Hernandez-Cerrato," he refers to himself in the immigration file as Mr. Hernandez, and accordingly the Court will do the same here.

1

threshold showing required under 18 U.S.C. § 3142(f)(2)). For the reasons that follow, in these circumstances the government has not met its burden.

## The Bail Reform Act

The Bail Reform Act, 18 U.S.C. § 3142, governs the standards for pretrial release or detention when a person has been charged with a federal crime.

When the government requests pretrial detention (or, as here, continued detention where a defendant has initially consented to detention), the threshold question is whether the Court may consider detention at all. There are three circumstances where a court is "authorized to conduct a detention hearing (i.e., to consider whether to detain [a] Defendant)." *United States v. Mendoza-Belleza*, 420 F. Supp. 3d 716, 716 (E.D. Tenn. 2019). These are set forth in § 3142(f): where the offense charged is one enumerated in § 3142(f)(1), where there is a "serious risk that such person will flee," 18 U.S.C. § 3142(f)(2)(A), or there is a "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror," *id*. § 3142(f)(2)(B). *See, e.g.*, *United States v. DeBeir*, 16 F. Supp. 2d 592, 593 (D. Md. 1998) ("A judge may order detention only after a detention hearing, which may be held only if one of six conditions is present. 18 U.S.C. § 3142(e), (f). Thus, a finding that one of the six conditions is met is a prerequisite to detention.") (citing *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992)); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (explaining that § 3142(f) "limits the circumstances under which a district court may order pretrial detention"); *Byrd*, 969 F.2d at 109 ("§ 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the [circumstances listed in (f)(1) and (f)(2)]."); *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) ("[T]he structure of the statute and its legislative history make it clear that

Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."); S. Rep. No. 98-225, at 12 (1983) ("Because detention may be ordered under section 3142(e) only after a detention hearing pursuant to subsection (f), the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.").[2]

Here, Congress did not include illegal reentry as an enumerated offense in (f)(1), and the government does not contend that Mr. Hernandez poses any risk of obstruction or the like under (f)(2)(B). The government proceeds only under the "serious risk that such person will flee" provision, § 3142(f)(2)(A). Thus, the threshold question presented here, before the Court would be permitted to consider denying Mr. Hernandez's request to return to ICE custody, is whether the government has shown, by a preponderance of the evidence, that there is a "serious risk" that Mr. Hernandez "will flee." 18 U.S.C. § 3142(f)(2).

There is limited authority on what constitutes a "serious risk that such person will flee." The language and structure of the Bail Reform Act provide some guidance, as the Act addresses questions of flight and nonappearance in three different ways. Under § 3142(f)(2)(a)—the threshold showing required here—the government must prove that the case involves a "serious risk that such person will flee." Under § 3142(d), the Act provides for temporary detention in some circumstances where a defendant "may flee." And under § 3142(e), part of the inquiry is whether there are conditions that "will reasonably assure the appearance of the person." Where Congress uses different language within the same statute, courts presume Congress meant the language to bear different meanings. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79,

---

[2] Section § 3142(d), which permits temporary detention of up to 10 days in certain circumstances, operates differently and is not at issue here.

Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists."); S. Rep. No. 98-225, at 12 (1983) ("Because detention may be ordered under section 3142(e) only after a detention hearing pursuant to subsection (f), the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.").[2]

Here, Congress did not include illegal reentry as an enumerated offense in (f)(1), and the government does not contend that Mr. Hernandez poses any risk of obstruction or the like under (f)(2)(B). The government proceeds only under the "serious risk that such person will flee" provision, § 3142(f)(2)(A). Thus, the threshold question presented here, before the Court would be permitted to consider denying Mr. Hernandez's request to return to ICE custody, is whether the government has shown, by a preponderance of the evidence, that there is a "serious risk" that Mr. Hernandez "will flee." 18 U.S.C. § 3142(f)(2).

There is limited authority on what constitutes a "serious risk that such person will flee." The language and structure of the Bail Reform Act provide some guidance, as the Act addresses questions of flight and nonappearance in three different ways. Under § 3142(f)(2)(a)—the threshold showing required here—the government must prove that the case involves a "serious risk that such person will flee." Under § 3142(d), the Act provides for temporary detention in some circumstances where a defendant "may flee." And under § 3142(e), part of the inquiry is whether there are conditions that "will reasonably assure the appearance of the person." Where Congress uses different language within the same statute, courts presume Congress meant the language to bear different meanings. *See Henson v. Santander Consumer USA Inc.*, 582 U.S. 79,

---

[2] Section § 3142(d), which permits temporary detention of up to 10 days in certain circumstances, operates differently and is not at issue here.

86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."). "The Bail Reform Act's detention provisions seem to draw an important distinction between nonappearance risk broadly and risk of flight more specifically." *United States v. White*, No. 3:21-mj-04070, 2021 WL 2155441 at *10 (M.D. Tenn. May 27, 2021) (quoting Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 701 (2018)); *see also id.* at *6 ("Congress could have drafted the statute so as to omit any requirement for detention that the case involve a 'serious risk of flight' and to direct courts to require only that the case involve a risk of non-appearance (that cannot adequately be mitigated by conditions of release). It did not do so.").

In this context, the *White* court articulated "a serious risk that such person will flee" as requiring the government to show a "serious risk that the defendant intentionally will avoid court proceedings." *Id.* at *7. That is consistent with all other authority the parties have cited and of which the Court is aware. *See, e.g.*, *United States v. Ailon-Ailon*, 875 F.3d 1334, 1335 (10th Cir. 2017) ("the plain meaning of 'flee' refers to a volitional act").

## Background

Mr. Hernandez is charged in a one-count indictment for illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). *See* ECF No. 1 (indictment). He was brought to Honduras by his mother as a teenager and settled in Nebraska. Later, he was charged and convicted with distribution of methamphetamine, and sentenced in 2012 to a term of 151 months' incarceration. Following a sentence reduction, he was deported to Honduras in April 2016.[3] Sometime between

---

[3] Mr. Hernandez, and the government, filed detailed and informative submissions in advance of the detention hearing. ECF Nos. 19 & 21. Both parties moved for those submission to be filed under seal. ECF Nos. 18 & 20. As explained herein, for the most part the Court does not need to reach consideration of the "medical and social history information of Mr. Hernandez-Cerrato" that prompted Mr. Hernandez's motion to seal. ECF No. 18. The Court agrees that sealing of that

then and June 2023 he returned to the United States, allegedly without authorization. ECF No. 1. On June 28, 2023, Mr. Hernandez was stopped for a traffic infraction on his way to work, was cooperative, and was released. He was arrested on September 19, 2023, by ICE agents, and held in ICE custody. On November 29, 2023, he filed a petition in the immigration proceeding seeking certain procedural protections in connection with his request for protection from removal under the Convention Against Torture.

That same month, a grand jury of this Court issued the indictment in this case, and he was transferred from ICE custody to the custody of the U.S. Marshals. On December 6, 2023, the Immigration Judge presiding over his immigration case denied Mr. Hernandez's procedural motion without prejudice "because the Applicant has been writted out of ICE custody," but permitted the motion to be renewed "when [he] comes back into ICE custody." In the meantime, there is an ICE detainer that remains in effect, such that if he were released from Marshals custody, he would revert to ICE custody. *See* 8 C.F.R. § 287.7(a) (authorizing immigration detainers pursuant to the Immigration and Nationality Act).

Against that backdrop, Mr. Hernandez has made two alternative requests. The first is that he be released on his own recognizance, "with whatever conditions [the Court] believes would be suitable pending the resolution of this case if [he] were released from ICE custody," which conditions "could include mental health counseling and living with his son in Annapolis." Def.'s

---

information is appropriate. But the need to seal that information does not necessarily mean the parties' entire submissions, and attachments, and supplemental material submitted on the day of the hearing, involve "compelling interests" that "outweigh the public's interest in accessing" that information. *United States v. Doe*, 962 F.3d 139, 146 (4th Cir. 2020); *see id.* at 145 ("Criminal proceedings and related documents are thus presumptively open to the public."). The parties are instructed to review their submissions and identify which documents, or portions thereof, in fact involve such compelling interests and to confirm such positions and proposed redactions with each other, and then to file public versions of whichever documents or portions thereof do not require sealing. *See* Loc. R. 207.

Mot. at 8. But recognizing that a request for actual release is premature, given the pendency of the ICE detainer, Mr. Hernandez has also made an alternative request. He seeks an order permitting him to return to ICE custody to pursue the immigration relief he had been in the process of seeking at the time of his indictment. Def.'s Mot. for Pretrial Release, Or, In The Alternative, For Temporary Pretrial Release, ECF No. 19 ("Def.'s Mot.") at 12. Specifically, he requests that he be transferred from Marshals custody to ICE custody, and further has consented to entry of an order authorizing the Marshals to lodge a detainer against him such that, in the event ICE were to release him, either by virtue of Mr. Hernandez prevailing in his immigration case or ICE otherwise electing not to keep him detained, he would revert back into Marshals custody.

## Discussion

As an initial matter, the Court denies without prejudice Mr. Hernandez's request for an order of release to the community. The Court finds that whether the government can prove a "serious risk" that Mr. Hernandez "will flee" if released with conditions is not ripe. There does not appear to be any dispute that even if the Court were to enter an order of "release," the Marshals would not in fact be permitted to release Mr. Hernandez into the community, but instead would return Mr. Hernandez to ICE, pursuant to the ICE detainer. If that detainer at some point is lifted, that will be the appropriate time for the Court to determine whether the government can prove that release, even with conditions, presents a "serious risk" that Mr. Hernandez "will flee." This denial in part of Mr. Hernandez's motion is without prejudice to either side reasserting, at such time, its positions regarding whether, in the absence of an ICE detainer, the government can prove there is a serious risk that Mr. Hernandez will flee if released from detention.

The more salient pending dispute arises from the government's motion under the Bail Reform Act for an order to keep Mr. Hernandez detained in Marshals custody, as opposed to ICE custody. That dispute presents two questions: (1) whether permitting Mr. Hernandez to revert to ICE custody presents a "serious risk" that Mr. Hernandez "intentionally will avoid court proceedings," *see supra*, and (2) whether, if the government shows such "serious risk," there is a "condition or combination of conditions" that "will reasonably assure" Mr. Hernandez's "appearance . . . as required," 18 U.S.C. § 3142(e)(1), and if so whether such conditions are the "least restrictive" necessary to "reasonably assure" his appearance. *Id.* § 3142(c)(1)(B).

The Court finds that, with respect to Mr. Hernandez's request that he be granted temporary release into ICE custody to pursue his claim under the Convention Against Torture, the government has not made any of these showings ("serious risk," "no condition," and "least restrictive"). The Court will be entering an order that provides, in pertinent part, as follows:

3. Mr. Hernandez is ordered released to the ICE Detainer, to return to ICE custody for the purpose of pursuing immigration relief, and shall remain in the custody of ICE during the pendency of that effort.

4. Upon conclusion of Mr. Hernandez's immigration case, regardless of its outcome, he shall return to the custody of the U.S. Marshals Service for the District of Maryland. Defendant has consented to revert to the detention of the Marshals Service in that event. In the event ICE releases or moves to deport Defendant, the Marshals Service is directed to coordinate with ICE to retake custody of Mr. Hernandez. To that end, the Marshals Service is expressly authorized to lodge a detainer with ICE such that, in the event ICE were to release or move to deport Defendant, he shall be returned to the custody of the Marshals Service.

5. In the event Defendant is released into the community from the custody of ICE, he must immediately report to the nearest U.S. District Court or office of the U.S. Marshals Service and surrender to the custody of the Marshals Service, at which time

> the parties shall inform the Court and may request a further detention hearing.

Given that, under this Court's order, Mr. Hernandez would be in the custody of either ICE or the U.S. Marshals until and unless further ordered by this Court, the government "cannot satisfy its threshold burden under [§] 3142(f)(2)(A) to show that there is a serious risk Defendant will flee." *Mendoza-Balleza*, 420 F. Supp. 3d at 718. Indeed, "[a]s long as Defendant remains in the custody of the executive branch, albeit with ICE instead of the Attorney General, the risk of his flight is . . . nonexistent." *Id.* (citing *United States v. Veloz-Alonso*, 910 F.3d 266, 268-69 (6th Cir. 2018)). Accordingly, the government cannot satisfy its threshold showing that, with such an order in place, there is any "serious risk" that Mr. Hernandez "will flee" within the meaning of 31 U.S.C. § 3142(f)(2).

The government has pointed to various factors that do give rise to some non-appearance risk if Mr. Hernandez were to be released on his own recognizance. Not only does the weight of the evidence presented to the Court to date indicate that Mr. Hernandez did indeed reenter the U.S. illegally, but other concerns arise as well from the information that has been filed under seal. But even if the Court were to reach the question of whether there are conditions that "will reasonably assure" Mr. Hernandez's "appearance . . . as required," 18 U.S.C. § 3142(e)(1), the Court's conclusion would be the same. This Court's order will permit Mr. Hernandez to be released (1) to the *detainer* imposed by ICE, and then (2) subject to a further *detainer*, by the Marshals, to authorize and indeed require that Mr. Hernandez not be released into the community but instead to revert into the custody of the U.S. Marshals, potentially for further proceedings in this Court under the Bail Reform Act. Such measures are adequate to "reasonably assure" Mr. Hernandez's appearance as required.

The government offers two arguments for why, even with such an order in effect, there is a "serious risk that [Mr. Hernandez] will flee," 18 U.S.C. § 3142(f)(2), and that such an order will not "reasonably assure the appearance of the person as required," *id.* § 3142(e)(1).

First, the government argues that, notwithstanding this Court's order, "ICE may, pursuant to its own policies, resources, and priorities, deport the Defendant." Gov't Mem. at 10. But as the Ninth Circuit has explained, the "risk of non-appearance" envisioned by § 3142(e)(1) of the Bail Reform Act, like the "serious risk that the person will flee" threshold showing, "must involve an element of violation." *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015). "[A] risk of *involuntary* removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based." *Ailon-Ailon*, 875 F.3d at 1337 (emphasis added).

In other words, the government cannot meet its threshold burden, to show there is a "serious risk that the defendant intentionally will avoid court proceedings," *White*, 2021 WL 2155441, at *7, based on the hypothetical possibility that ICE—the agency that referred Mr. Hernandez's case for criminal prosecution in the first place, *see* Def. Mot. Ex. F (Report of Investigation), and whose agent is the case agent for this prosecution—would undermine that very prosecution by deporting Mr. Hernandez against the wishes of the U.S. Attorney's Office. "Any risk of non-appearance" in that scenario would be "created by the United States and its executive arms, not by the defendant." *United States v. Espinoza-Ochoa*, 371 F. Supp. 3d 1018, 1022 (M.D. Ala. 2019). Indeed, adopting the government's risk-of-deportation theory could itself very well constitute reversible error. *See Santos-Flores*, 794 F.3d at 1092 ("[T]he district court erred in relying on the existence of an ICE detainer and the probability of Santos-Flores's immigration detention and removal from the United States to find that no condition or combination of conditions will reasonably assure Santos-Flores's appearance pursuant to 18

U.S.C. § 3142(e)."). The government has not cited any cases that have interpreted the Bail Reform Act otherwise, and the Court is not aware of any.

Second, the government argues there is a "serious risk" that Mr. Hernandez will flee because, it posits, notwithstanding this Court's order requiring that if Mr. Hernandez is to be released from ICE custody that he instead be returned to Marshals custody, ICE might fail to do so and instead "release him into the community after the conclusion of any attempt at immigration relief." Govt. Mem. at 10. But as Judge Quereshi has explained in rejecting this argument, in light of the series of other cases in which orders comparable to that this Court will be entering and that "had not resulted in the release of the defendant into the general public," he would not "accept the government's speculation that the Defendant would be released," particularly where "the government emphasized that it believed that ICE—as opposed to the Defendant—would not comply with an Order of this Court." *United States v. Cardona-Orellana*, Case No. LKG-23-cr-224, ECF No. 32 (March 13, 2024), *aff'd*, ECF No. 36 (March 18, 2024). Here, the Court is (1) expressly directing ICE, if it is considering releasing Mr. Hernandez, to instead return him to Marshals custody, (2) authorizing and instructing the Marshals to lodge a detainer with ICE to provide a direct transfer of custody from ICE back to Marshals custody, and (3) ordering Mr. Hernandez, in the unlikely event ICE were to erroneously release him, to immediately surrender to the nearest federal court or Marshals office. And Mr. Hernandez's counsel has assured the Court that she and her office routinely, and successfully, coordinate with ICE and the government to avoid such administrative errors and effectuate orders comparable to the order this Court is entering contemporaneously with this opinion. The theoretical possibility that there would be a breakdown or failure to comply with this Court's order does not suffice to satisfy the government's burden to prove a serious risk of flight under 18 U.S.C. § 3142(f)(2), or

to prove that there are no conditions that will reasonably assure Mr. Hernandez's appearance under 18 U.S.C. § 3142(e).[4]

## Conclusion

For these reasons, in light of Mr. Hernandez's request to return to ICE custody, and the protections as set forth in this Court's separate order, the government has not met its threshold burden under 18 U.S.C. § 3142(f)(2), or the showing required under § 3142(e), to justify denying his request to return to ICE custody. Mr. Hernandez's motion will be denied in part and granted in part. A separate order follows.

Date:   March 28, 2024

_____
Adam B. Abelson
United States Magistrate Judge

---

[4] Because the Court finds that, with respect Mr. Hernandez's request to return to ICE custody, the government has not shown a serious risk that Mr. Hernandez will flee, the Court need not and does not reach his alternative motion for temporary release pursuant to § 3142(i), which authorizes "temporary release" where "necessary for preparation of the person's defense or for another compelling reason."