IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | |
| JOSE HERNANDEZ-CERRATO, | Crim. No.: MJM-23-419 |
| Defendant. | |

### MEMORANDUM

Currently pending is the United States of America's Motion to Vacate Release Order. ECF No. 29. The government asks that the Court vacate the Order entered on March 24, 2024, by Magistrate Judge Adam B. Abelson. ECF No. 26. The Order at issue directs the release of defendant Jose Hernandez-Cerrato ("Mr. Hernandez") from the custody of the U.S. Marshals Service ("USMS") to the custody of U.S. Immigration and Customs Enforcement ("ICE") pursuant to a detainer lodged by ICE and requires Mr. Hernandez to return to USMS custody prior to any release or deportation by ICE. *Id.* The government requests an order that Mr. Hernandez remain in USMS custody pending trial. Mr. Hernandez opposes the government's motion. ECF No. 31. On April 4, 2024, the Court heard oral argument on the motion and took the matter under advisement.

For reasons explained herein, the Court will deny the motion and affirm the Order of March 28, 2024, with modification. In summary, the Order is supported by compelling circumstances under 18 U.S.C. § 3142(i) and, as modified herein, will reasonably assure Mr. Hernandez's appearance at future court proceedings in this case.

1

I.   **FACTUAL BACKGROUND**[1]

Mr. Hernandez was born in Honduras in 1990. He is now 33 years old. He first entered the United States unlawfully when he was approximately 15 years old and went to live with his parents in Nebraska. ECF No. 19-4 at 67. He was arrested several times in Nebraska between 2007 and 2011. ECF No. 19-11. In December 2009, ICE lodged a detainer with a state detention facility in Grand Island, Nebraska, and Mr. Hernandez was released to ICE custody the same month. ECF No. 19-13. In January 2010, ICE issued Mr. Hernandez a Form I-862 Notice to Appear, initiating removal proceedings, and he bonded out of ICE custody. In February 2010, Mr. Hernandez's stepfather, a U.S. citizen, filed a Form I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Service seeking to establish for Mr. Hernandez eligibility to obtain lawful immigration status in the U.S. ECF Nos. 19-13 & 33. In April 2010, Mr. Hernandez was convicted of obstructing a peace officer and received a 10-day jail sentence. ECF No. 19-11. He filed an application for asylum and for withholding of removal with the Executive Office of Immigration Review in May 2010. ECF No. 19-13.



---

[1] This factual background is drawn from information obtained by Pretrial Services and proffered by the parties and from exhibits attached to the parties' filings in this matter. The Court notes that Mr. Hernandez has not entered a guilty plea or been convicted at trial and therefore remains entitled a presumption of innocence as to the pending charge. *See* 18 U.S.C. § 3142(j).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ In 2016, Mr. Hernandez was deported to Honduras. ECF No. 19-5.

Mr. Hernandez reentered the United States in or around 2021. ECF No. 19-7. The defense proffers that, prior to his arrest in this case, Mr. Hernandez was living with a cousin in Annapolis, Maryland and assisted in the care of the cousin's children. Mr. Hernandez's own children reside in Nebraska and in Mexico. He has no formal employment history but has worked without lawful authorization. In 2022, Mr. Hernandez applied to the Internal Revenue Service for a tax identification number as a step toward paying taxes on his income. ECF No. 31-1.

---

████████████████████████████████████████

On June 28, 2023, an officer of the Maryland Transportation Authority Police conducted a traffic stop of a vehicle Mr. Hernandez was driving. The officer issued a citation to Mr. Hernandez for driving without a license. ICE was notified of Mr. Hernandez's presence in the United States and referred the matter to the U.S. Attorney's Office ("USAO") for prosecution. ECF No. 19-6.

ICE agents arrested Mr. Hernandez on September 19, 2023, *id.*, and removal proceedings were initiated. ███████████████████████████████████████████████

A hearing in the immigration case was scheduled for December 6, 2023. On or about November 30, 2023, Mr. Hernandez was removed from ICE custody pursuant to an arrest warrant and writ of habeas corpus ad prosequendum issued for proceedings in this Court. On December 6, 2023, the immigration judge denied Mr. Hernandez's pending motion without prejudice to renewal once he returns to ICE custody. ECF No. 19-9.

## II.     PROCEDURAL BACKGROUND[5]

The grand jury returned the Indictment pending in this matter on November 21, 2023, charging Mr. Hernandez with reentry of a deported alien in violation of 8 U.S.C. § 1326(a) and (b)(2). The following week, the government applied for a writ to have Mr. Hernandez transported from ICE custody by ICE agents to this Court for his initial appearance. The writ was granted, Mr. Hernandez had his initial appearance on November 30, 2023, and the Office of the Federal Public Defender was appointed to represent him in this case. At that time, Mr. Hernandez consented to an order of pretrial detention without prejudice to either party later requesting a hearing to set conditions of release or a detention hearing. ECF No. 9. Pursuant to the Order of Detention by Agreement, Mr. Hernandez was remanded to the custody of USMS, where he presently remains. ICE has lodged an immigration detainer with USMS identifying Mr. Hernandez as a removable alien subject to a final order of removal and requesting to be notified prior to his release from USMS custody, so that ICE may assume custody. ECF No. 19-1.

On March 18, 2024, Mr. Hernandez, through counsel, filed a Motion for Pretrial Release or, in the Alternative, for Temporary Pretrial Release, ECF No. 19, and the government filed a

---

[5] The Court notes that most of the parties' filings described in this procedural background were filed under seal with accompanying sealing motions. *See* ECF Nos. 18, 20, 22, 28 & 32. The sealing motions remain pending as of this date.

written opposition three days later, ECF No. 21.[6] Judge Abelson conducted a hearing to address the motion for pretrial release on March 22, 2024, and took the matter under advisement. On March 28, 2024, Judge Abelson issued a Memorandum Opinion and an Order granting in part and denying in part the motion (the "March 28th Order"). ECF Nos. 25 & 26. The March 28th Order provides that Mr. Hernandez is to be released from USMS custody to ICE custody pursuant to the ICE detainer for the purpose of pursuing immigration relief and that he shall return to USMS custody prior to any release or deportation by ICE. ECF No. 26. The government promptly filed a motion to stay release of Mr. Hernandez pending review by the undersigned presiding district judge, ECF No. 27, and Judge Abelson granted the stay, ECF No. 30.

On March 29, 2024, the government filed a motion to vacate the March 28th Order, ECF 29, and Mr. Hernandez filed a response in opposition and several exhibits, ECF Nos. 31 & 33. The undersigned conducted a hearing to address the government's motion on April 4, 2024.

### III.   LEGAL STANDARD

The Bail Reform Act of 1984 ("BRA") provides four options for release or detention of a criminal defendant pending trial: "(1) release on personal recognizance or upon execution of an unsecured appearance bond under [18 U.S.C.] § 3142(b); (2) release on one or more conditions outlined in § 3142(c); (3) temporary detention to permit revocation of conditional release, deportation, or exclusion under § 3142(d); or (4) detention pursuant to § 3142(e)." *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1123 (N.D. Iowa 2018) (citing 18 U.S.C. § 3142(a)); *see also United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 588 n.1 (E.D. Ky. 2023). "In our

---

[6] Before the motion for pretrial release was filed, the government filed two consent motions for exclusion of time from Speedy Trial Act calculations, and both were granted. ECF Nos. 13 & 16. Pursuant to the orders granting these motions, the period from November 30, 2023, through May 1, 2024, is excluded from time computations under the Speedy Trial Act. ECF Nos. 14 & 17.

society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. . . . [T]he provisions for pretrial detention in the [BRA] fall within that carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

The BRA "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017); *see also Cobix-Espinoza*, 655 F. Supp. 3d at 587.

> First, the government may move for pre-trial detention if the defendant has been charged with certain enumerated offenses or "in a case that involves . . . a serious risk that such person will flee; or . . . a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

*Ailon-Ailon*, 875 F.3d at 1336 (quoting 18 U.S.C. § 3142(f)).

> Second, if one of the § 3142(f) conditions for holding a detention hearing exists, § 3142(e) directs the Court to conduct a detention hearing and determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community.

*Cobix-Espinoza*, 655 F. Supp. 3d at 587 (citing 18 U.S.C. § 3142(e)).

> The district court is directed to consider various factors in making this determination, including "the nature and circumstances of the offense charged," "the weight of the evidence against the person," "the history and characteristics of the person," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

*Ailon-Ailon*, 875 F.3d at 1336–37 (quoting 18 U.S.C. § 3142(g)).

Following an order of pretrial detention, the court "may, by subsequent order, permit the temporary release of the [defendant] . . . to the extent that the [court] determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

If the defendant "is ordered released by a magistrate judge . . . the attorney for the Government may file . . . a motion for revocation of the order or amendment of the conditions of release" for consideration by the presiding district judge. 18 U.S.C. § 3145(a)(1). The district judge reviews the matter de novo and "must make an independent determination" as to pretrial detention or conditions of release. *United States v. Gallagher*, Crim. No. SAG-19-0479, 2020 WL 2614819, at *3 (D. Md. May 22, 2020) (quoting *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001)).

In its motion, the government seeks revocation of the March 28th Order and entry of an order of pretrial detention on the grounds that the case involves a serious risk of flight, that no release condition or combination of release conditions will reasonably assure Mr. Hernandez's appearance at future proceedings in this matter, and that he fails to demonstrate a need or compelling reason for temporary release pursuant to 18 U.S.C. § 3142(i).

## IV.  DISCUSSION

The parties dispute the legal authority for the March 28th Order and where the Order falls within the structure of the BRA. I note at the outset that, as the district court in *Cobix-Expinoza* put it, the BRA "functions more like a twisting labyrinth than an easily navigated roadway." 655 F. Supp. 3d at 587. The BRA's labyrinthine nature may, in a given case, lay out multiple pathways to the same result. The government characterizes the March 28th Order as a temporary release order and argues that temporary release is not supported by a compelling reason under 18 U.S.C. § 3142(i). ECF No. 29 at 1–3, 7–10. The government further argues that the case involves a serious risk of flight and the conditions set in the March 28th Order will not reasonably assure community safety or Mr. Hernandez's appearance for court as required. *Id.* at 3–7. The defense, on the other hand, views the March 28th Order as an order setting conditions of release pursuant to § 3142(c) and argues that the Order is supported by a lack of serious flight risk and by conditions that will

8

reasonably assure Mr. Hernandez's appearance for future court proceedings. ECF No. 31 at 1–2, 5–11. Alternatively, the defense argues that a temporary release order under § 3142(i) would be justified by compelling circumstances and necessary for Mr. Hernandez to prepare a defense. *Id.* at 2, 11–15.

This Court finds that the March 28th Order is properly viewed as a temporary release order under § 3142(i) in that it orders Mr. Hernandez's release from USMS custody on a temporary basis and under prescribed conditions that ensure his eventual return to USMS custody pending trial. In its motion before Judge Abelson, the defense specifically requested a temporary release order in the alternative to pretrial release under conditions of supervision. ECF No. 19 at 8–12. In connection with this alternative request, Mr. Hernandez consented to entry of a pretrial detention order so that USMS could lodge a detainer with ICE and retake custody at any point he is released by ICE. *Id.* at 12. The March 28th Order denies the primary relief requested by Mr. Hernandez (release to the community with conditions) without prejudice to renewal of this request upon USMS retaking custody. ECF No. 26 ¶ 2.

The Order goes on to outline conditions of the temporary release to ICE custody that are generally consistent with temporary release orders previously entered in other cases by other judges of this Court. *Compare id.* ¶¶ 3–5; *with United States v. Robles-Mesa*, Crim. No. DKC-20-375, ECF No. 27 at 3 (D. Md. July 2, 2021) (J. Day); *United States v. Guzman-Mata*, Crim. No. PX-21-241, ECF No. 19 at 3 (D. Md. Sep. 24, 2021) (J. Day); *United States v. Campos*, Crim. No. PX-21-493, ECF No. 27 at 3 (D. Md. June 30, 2022) (J. Quereshi); *United States v. Rivera-Martinez*, Crim. No. GLR-22-208, ECF No. 18 at 3 (D. Md. Nov. 18, 2022) (J. Gesner); *United States v. de la Rosa-Marin*, Crim. No. RDB-22-299, ECF No. 24 at 3 (D. Md. Dec. 12, 2022) (J. Maddox). Each of these prior orders provided that (1) the defendant was to be released to ICE

custody solely to pursue immigration relief; (2) release from USMS would be withdrawn upon notice of the defendant's anticipated release from ICE custody; (3) a detainer would be lodged with ICE to allow USMS to later retake custody; and (4) the defendant was required to surrender to USMS custody upon release by ICE. In substance, the March 28th Order includes the same provisions, including specific authorization for USMS to lodge a detainer with ICE and to retake custody of the defendant upon release by ICE.[7]

Through an independent review of the record and assessment of the parties' arguments, this Court also finds justification for the provisions of the March 28th Order as a temporary release order under 18 U.S.C. § 3142(i). This section of the BRA provides that, after entering a pretrial detention order, "the judicial officer may . . . permit the temporary release of the [defendant], in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). "The defendant has the burden of establishing circumstances warranting temporary release pursuant to § 3142(i)." *United States v. Bothra* ("*Bothra II*"), 838 F. App'x 184, 185 (6th Cir. 2021); *see also United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) (citing cases). "There is limited authority addressing what constitutes a compelling reason" and "what conditions require release for defense preparation."

---

[7] The March 28th Order does not specifically refer to itself as a "temporary" release order, and the accompanying Memorandum Opinion does not rely upon 18 U.S.C. § 3142(i) as authority for the Order. I note that, in the Memorandum Opinion, Judge Abelson found that Mr. Hernandez's release to ICE custody posed no serious risk of flight and, for this reason, expressly declined to "reach his alternative motion for temporary release pursuant to § 3142(i)." ECF No. 25 at 11 n.4. On this basis, at the hearing on April 4, 2024, I expressed the view that the March 28th Order might be construed as an order setting conditions of pretrial release under § 3142(c). Upon further consideration of the March 28th Order, prior temporary release orders entered in other cases, and relevant provisions of the BRA, I am convinced that the March 28th Order is the functional and practical equivalent of temporary release orders entered in other cases and is properly viewed as such. Construing the March 28th Order as, instead, § 3142(c) pretrial release order would endorse an end run around the statutory requirements for a temporary release order under § 3142(i), as discussed *infra*.

*United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020). Whether to enter a temporary release order pursuant to § 3142(i) falls within the discretion of the court. *See Bothra II*, 838 F. App'x at 185; *United States v. Otunyo*, No. 18-CR-251 (BAH), 2020 WL 2065041, at *8 (D.D.C. Apr. 28, 2020).

The Court finds that Mr. Hernandez has satisfied his burden of presenting compelling reasons to justify temporary release to ICE custody. He was in ICE custody for approximately two months before his indictment in this case. During that time, removal proceedings were initiated against him, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ he obtained pro bono immigration counsel and had at least one status hearing, and counsel filed on his behalf a motion ▮▮▮▮▮▮▮▮▮▮▮▮. ECF Nos. 19-7 & 19-8. The motion filed in Mr. Hernandez's immigration case requests ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and, ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ administrative closure of the proceeding. ECF No. 19-8 at 12–19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ *Id.* A hearing date to address Mr. Hernandez's motion was scheduled in the immigration case for the week after he was transferred out of ICE custody pursuant to the arrest warrant and writ issued in the instant case. His transfer out of ICE custody resulted in denial of his motion in the immigration case without prejudice to renewal upon his return to ICE custody. In short, before he was taken out of ICE custody, Mr. Hernandez's immigration case had, with the assistance of pro bono counsel, progressed substantially toward adjudication.

11

If Mr. Hernandez is not released to ICE custody until after serving any prison sentence imposed in the instant case, he may lose his pro bono representation, and his effort to obtain either administrative closure of his immigration case or withholding of removal could be seriously jeopardized. Apart from the risk that Mr. Hernandez's pro bono representation may be disrupted, ▮▮▮ The outcome of Mr. Hernandez's removal proceedings will determine whether he will be permitted to remain in the United States or if he will be deported to Honduras. This Court has no reason to doubt that these are matters of the highest importance to Mr. Hernandez. The ▮▮▮ he seeks in his immigration case are not expected to cause any delay in that proceeding. If, alternatively, the matter is administratively closed or terminated, he would be transferred back to USMS custody.

The impact that temporary release may have on the criminal case is worthy of careful consideration by the Court under the BRA because it may create a risk the defendant will not be available to appear for scheduled court proceedings and, more broadly, implicates the timely administration of justice. According to the government, once Mr. Hernandez is released to ICE custody, ICE will almost certainly house him outside of this district due to the unavailability of local bedspace and the lack of ▮▮▮ within ICE locally. ECF No. 29 at 9 (citing ECF No. 23 at 3). The government argues that out-of-state ICE detention would cause delay in the instant case by impeding Mr. Hernandez's ability to communicate with his

counsel and complicating or even precluding transportation of Mr. Hernandez to this district for any required court appearances.

The Court does not expect that temporary release would unduly interfere with the progress of the instant case, and the impact of any potential delay is mitigated by Mr. Hernandez's waiver of speedy trial rights and the lack of any prejudice to the government. This is not a case that will rely heavily on the recollections of witnesses or evidence that may become stale. No dates for trial or any pretrial hearing are currently set, and it does not appear that the case is ready for trial. The defense requires additional time to consider whether to file pretrial motions based on evidence recently disclosed in discovery, and the parties have stipulated to exclusion of time from computations under the Speedy Trial Act to explore a potential resolution of the case short of trial. *See* ECF Nos. 16 & 17. The question of ███████████████████████ in the instant case may also warrant inquiry and may further extend the life of this criminal matter. The Court expects that the instant case will continue to progress while Mr. Hernandez is in ICE custody concurrently pursuing immigration relief. If Mr. Hernandez's immigration case is still pending when the instant criminal case is ready for further court proceedings, the Court may issue a writ to have him transported to court for those proceedings.

Considering the posture of Mr. Hernandez's immigration case and pro bono representation in that case, as well as provisions in the March 28th Order that ensure he remain in custody while his immigration case progresses, the Court finds resumption of the immigration case a compelling enough reason to justify temporary transfer of custody from USMS to ICE.

Again, the March 28th Order is not the first and only order entered by a judge of this Court authorizing temporary and conditional release of a defendant in an illegal reentry case for purposes of pursuing immigration relief while under a USMS detainer pending return to USMS custody.

*See supra*.[8] The government attempts to distinguish the instant case on the grounds that most of the temporary release orders entered in other cases were issued before April 2023, when the national emergency concerning COVID-19 was terminated. ECF No. 29 at 7 (citing H.J. Res. 7). But the government fails to cite any court records to suggest that any of the prior temporary release orders had anything to do with the COVID-19 pandemic.

The government argues that this Court lacks the authority to restrict or compel ICE to cooperate with the March 28th Order and that ICE could, in contravention of the Order, either release Mr. Hernandez to the community or deport him after he enters ICE custody.[9] ECF No. 29 at 9. I am not persuaded by these arguments. The March 28th Order does not issue any directives to, nor place any restrictions on, ICE. The provision that Mr. Hernandez remain in ICE custody during pendency of his immigration case is not a requirement on ICE to retain custody until the immigration case is completed. The Order does not require ICE to maintain custody of Mr. Hernandez if it determines that he is to be released or deported; it only requires USMS to lodge a detainer with ICE and retake custody upon release from ICE. The Court does expect (1) that ICE will comply with a USMS detainer, as it has in the past, and notify USMS before Mr. Hernandez is released from ICE custody, as the detainer would require; and (2) that ICE will communicate with the USAO (its partner in the instant prosecution) before Mr. Hernandez is either released or

---

[8] In *United States v. Kringlie*, in a similar context, a magistrate judge of the U.S. District Court for the District of Nevada granted temporary release of a criminal defendant to state custody pending resolution of state charges. No. 3:21-cr-13-MMD-CSD, ECF No. 19 (D. Nev. March 19, 2021).

[9] This Court is not the first to be confronted with the odd proposition that ICE will not act to prevent removal of, or flight by, an individual with pending federal criminal charges that ICE itself has collaborated with the USAO to prosecute. *See, e.g.*, *Villatoro-Ventura*, 330 F. Supp. 3d at 1132 ("Several courts have commented on the fact that ICE and the USAO appear to start these cases in apparent agreement as to the correct course of action, yet reach an insuperable conflict upon the defendant's exercise of his or her rights under the BRA.[] To the best of my knowledge, after considerable research, no court addressing this issue has been able to explain this diversion of interests within the Executive Branch.") (citing cases); *Arizona v. United States*, 567 U.S. 387, 396 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials.").

deported. The government has not cited any instances in which authorization of temporary release to ICE custody with a USMS detainer resulted in the release or deportation of a detainee by ICE while the criminal case was pending.[10]

Next, the government contends that the Court cannot reasonably expect Mr. Hernandez to comply with provisions of the March 28th Order that restrict or compel action by him to avoid his flight from prosecution and to assure his appearance for future proceedings in this case. ECF No. 29 at 9. The Order does require Mr. Hernandez to take affirmative steps to surrender to USMS custody "*[i]n the event* [he] is released into the community" by ICE. ECF No. 26 ¶ 5 (emphasis added). But if ICE complies with the USMS detainer then there is no reason to expect that ICE would release Mr. Hernandez into the community.

Finally, the government points out that, even while in ICE custody, Mr. Hernandez could effectively flee from prosecution simply by consenting to deportation.[11] ▬▬▬▬▬▬▬

---

[10] The Court is aware of criminal cases in which a pretrial release order was entered for a defendant pending removal proceedings on a *non-temporary* basis and *without* provision for a USMS detainer. *See, e.g.*, *Villatoro-Ventura*, 330 F. Supp. 3d 1118; *United States v. Figueroa-Alvarez*, No. 4:23-CR-00171-DCN, 2023 WL 4485312 (D. Idaho July 10, 2023). In at least some of these cases, the defendant was removed while the criminal case was pending, resulting in dismissal of the charges. *See Villatoro-Ventura*, No. 5:18-cr-4060, ECF No. 72 (order of dismissal); *Figueroa-Alvarez*, No. 4:23-CR-00171, ECF No. 19 (same). I am not aware of any cases involving *temporary* release *with* provision for a USMS detainer where a criminal defendant was removed before adjudication of the criminal case. The experience of this Court with temporary release orders has been successful in assuring defendants' appearance for criminal proceedings, both in cases where the defendant obtained immigration relief and where they did not. *See Robles-Mesa*, Crim. No. DKC-20-375, ECF No. 49 (judgment and commitment order); *Guzman-Mata*, Crim. No. PX-21-241, ECF No. 34 (same); *Campos*, Crim. No. PX-21-493, ECF No. 55 (same); *Rivera-Martinez*, Crim. No. GLR-22-208, ECF No. 32 (same).

[11] It is not presently clear to the Court whether such a hypothetical consent to removal by Mr. Hernandez would constitute a "departure" under immigration regulations that place controls on aliens voluntarily departing from the United States. "[R]egulations regarding voluntary departure provide that ICE may temporarily prevent an alien from leaving the country 'if his departure would be prejudicial to the interests of the United States.'" *Ailon-Ailon*, 875 F.3d at 1339 (quoting 8 C.F.R. § 215.2(a)). "A departure is deemed prejudicial to United States interests if the alien 'is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court.'" *Id.* (quoting 8 C.F.R. § 215.3(g)). It is clear, however, that *involuntary* removal does not constitute a "departure" within the meaning of these regulations; the regulations "merely prohibit aliens who are parties to a criminal case from departing from the United States *voluntarily*[.]" *United States v. Baltazar-Sebastian*, 990 F.3d 939, 946 (5th Cir. 2021)

15

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████ Although the foregoing suggests that Mr. Hernandez is unlikely to consent to deportation while this case is pending, the Court finds the risk he would so consent to be a serious enough risk of flight to call for modification of the March 28th Order. The Order shall be modified to add a condition specifically prohibiting Mr. Hernandez from requesting or consenting to deportation, or attempting to do so, while in ICE custody, and requiring defense counsel to provide a copy of the Order to Mr. Hernandez's immigration counsel. Combined with the provisions for a USMS detainer and return to USMS custody in advance of any removal, the Court finds these conditions adequate to address any risk of flight and will reasonably assure Mr. Hernandez's appearance for future proceedings in this matter.

---

(quoting *United States v. Lett*, 944 F.3d 467, 472 (2d Cir. 2019) (emphasis in original). The regulations "do not affect the government's authority *to deport* such aliens pursuant to final orders of removal." *Lett*, 944 F.3d at 473 (emphasis in original).

## V.	CONCLUSION

For the foregoing reasons, the government's Motion to Vacate Release Order (ECF No. 29) will be denied. The March 28th Order (ECF No. 26) will be affirmed with modifications described herein. A separate Order will issue.

    /S/
Matthew J. Maddox
United States District Judge